## COMPETENCY OF EVIDENCE IN A RAILWAY CROSSING ACCIDENT CASE.

Circuit Court of Cuyahoga County.

EMILY DAVIDER v. THE WHEELING & LAKE ERIE RAILWAY COMPANY.

Decided, May 27, 1912.

*Railroad Crossing Accident—Obstruction of View—Evidence—Ordinance Limiting Speed of Train.*

1. In a railroad crossing accident case, a witness who has made an inspection of certain premises for the purpose of discovering whether certain buildings obstructed the view from a given point along the line of a railroad track, may testify that they do or do not obstruct the view, but where an objection to such evidence is sustained and the court thereafter permits the exact situation, with location and dimensions of buildings with reference to the track to be given to the jury, from which it may readily conclude whether or not the view was obstructed as claimed, no prejudice results from the exclusion of the witness' answer to the first question.

2. So also with regard to the plaintiff's own statements that her view
    was obstructed by certain objects, at the time of the accident when
    she was about to cross the track.
3. It is competent on cross-examination of plaintiff in such case to ask
    her if she knew of a village ordinance limiting the speed of trains
    at the place where she was injured.

*A. W. Lamson,* for plaintiff in error.
*Squire, Sanders & Dempsey,* contra.

MARVIN, J.; WINCH, J., and NIMAN, J., concur.

The parties here are as they were in the court below. The
plaintiff brought suit against the Pennsylvania Company, and
later by amendment of the petition, the present defendant in
error was made a party defendant. The purpose of the action
was to recover for injuries received by the plaintiff on the 31st
day of May, 1907, when driving in a one-horse buggy across the
track of the Pennsylvania Company on Grace street, in the vil-
lage of Bedford, in this county.

At the close of the evidence introduced by the plaintiff, the
court directed a verdict for the defendant, the Wheeling & Lake
Erie Railway Company. Verdict was accordingly rendered and
judgment entered on such verdict, dismissing the petition as
against said last named defendant. By proper proceedings, the
action of the court in that regard is here for review.

The tracks of the two railroad companies run nearly parallel
to each other, and the direction is nearly south and north. Grace
street, on which the plaintiff was driving, crosses the tracks of
the two companies nearly at right angles. The locomotive on a
train of the Pennsylvania Company, proceeding west, collided
with the buggy in which the plaintiff was driving, resulting in
injuries to her.

The distance between the track of the Wheeling & Lake Erie
Railway Company and the track of the Pennsylvania Company,
on which the plaintiff was injured, is something like 15 feet.
The track of the Wheeling & Lake Erie Company is east of the
track of the Pennsylvania Company on which the accident oc-
curred. The plaintiff was driving toward the west and had to
cross the track of the Wheeling & Lake Erie Company before

reaching the Pennsylvania Company's track where she was injured. As she approached the Wheeling & Lake Erie Company's track, there was a freight train standing upon such track, and she was detained for a considerable time by reason of this train. She was finally able to drive across this track by the cutting of the train, leaving an opening sufficient between the cars to allow her to drive across the track, and she says that she was signalled by an employee of the Wheeling & Lake Erie Company to drive across.

On a side-track of the Pennsylvania Company, which was east of the track on which she wsa injured, there were cars standing, so that, she says, she was unable to see the train approaching on the Pennsylvania track.

The acts of negligence charged against the Wheeling & Lake Erie Company are that it failed to establish methods of warning other than by bell and whistle, at a crossing alleged to be more dangerous than the usual crossing, by reason of obstruction to view by a freight train on the Wheeling & Lake Erie passing same; freight cars on the Pennsylvania storage track, and buildings, fences and bushes erected and permitted on the rights of way of both companies. Further, that there was unnecessary blocking of the crossing by the train on the Wheeling & Lake Erie road. ·

One of the errors alleged in the petition is that the verdict was against the weight of the evidence; in any event, that there was evidence tending to show negligence on the part of the Wheeling & Lake Erie Company, and that there being such evidence, the court was bound to have submitted the case as between the plaintiff and the last named defendant to the jury.

For reasons explained by the court on the hearing of this case, this question can not be considered by us, and it is not necessary to discuss it further here. The evidence is not all before us, and under rulings of this court, affirmed by the Supreme Court, we have no authority to examine into the question of the facts in this proceeding.

It is urged, however, that there is error manifest in the record in the ruling which the court made upon the admission of evidence.

Attention is first called to an alleged error of this sort appearing at page 7 of the record. Frank William Karber was a witness who had been called by the plaintiff, and testified as to the location of the tracks and his observations and experiments made at the place where the accident occurred. From the evidence it appears that there was a tool house situated on the right-of-way of the Wheeling & Lake Erie Company, and it was claimed that this tool house was so situated as to render it impossible for one driving on Grace street, as this plaintiff was, to see along the track of the Pennsylvania Company for a sufficient distance to avoid collision with trains coming on that road from that direction.

After the witness had told that he had made some experiments to determine the effect that the location of this tool house had upon the view of one from Grace street along the Pennsylvania track, he was asked this question:

"What did you do?"

This was objected to by the defendant; the objection, however, was overruled by the court, and the witness answered:

"I stood on the south track of the Wheeling & Lake Erie, on the south rail of the main track, and observed that the tool house obstructed the view of the westbound track, beginning at a point about 1000 feet back and extending for quite a distance.

"Q.   Back from where?   A. Standing on the south rail of the main track."

Then his attention is called to the fact that at that particular point although the general direction of the road is east and west, as it passes through this village, it runs practically north and south, and the track which is on the left hand side as trains are coming toward Cleveland, is spoken of among the railroad people as the southerly track, although at this particular point it is the westerly track.

The witness then says:

"Standing on the westerly rail I observed that the tool house obstructed the view of the west bound track, beginning at a point approximately 1000 feet back from the center line of Grace street."

The defendant moved that this answer be taken from the jury and this motion was sustained.

It is said that there is error in this, because the point which the plaintiff was seeking to make was that the Wheeling & Lake Erie Road had erected á building on its right-of-way at such a point that it obstructed the view of the Pennsylvania Road, and that therefore this was negligence on the part of the Wheeling & Lake Erie Company.

Other questions were asked of a similar nature immediately following the questions to which attention has been called, and objection to some of them being answered was sustained, and answers to others were taken from the jury.

It is urged on the part of the defendant in error that the rulings were proper because, it is said, to say that a building obstructed one's view is to state a conclusion.

We are not impressed with the soundness of this reasoning. It seems to us exceedingly technical to say that one may not testify that a building obstructed his view. However, we are unable to see that the plaintiff suffered from this ruling, by reason of what immediately followed.

The witness was asked to describe the tool house, size and height. He had already given its location, and he answered to this question as follows:

"The tool house, the side parallel with the west bound track of the Pennsylvania line was 14 feet 9 inches wide; the side at right angles was 16 feet and 6 inches wide; and the height I didn't ascertain any more than from observation, but my memory is that it was about 12 feet high."

Then he was asked to give the length of the switch of the Wheeling & Lake Erie, which he gave.

Following this he was asked this question:

"Did you make any observation to see what, if any, obstruction was created by the tool house which you described and located on this map, to a person standing at or near the Wheeling & Lake Erie tracks at Grace street?"

An objection to this was sustained, and it was stated by counsel for the plaintiff as follows:

"We expect to show that he took a position on the center line of Grace street in the easterly track of the Wheeling & Lake Erie Railroad Company, and looked south for the purpose of seeing what, if any, obstruction this tool house was to a view of the west bound track of the Pennsylvania Company, and found that the tool house cut off the view of a person, situated as he was, of the west bound track of the Pennsylvania Company, from a point about 900 feet south of Grace street in said track southerly as far as the track was in view, which was to the point where the track, by reason of the curve, passed out of the view of a person at Grace street."

On cross-examination the witness was asked again as to the location of this tool house, and he gave it as in the direct examination.

We think that no prejudice came to the plaintiff by reason of sustaining objections to the question as to what effect the matter of the obstruction of the view of the witness this tool house had, because when the dimensions of the tool house were given, the point from which the witness looked and the situation of the track, the jury had full information that the tool house obstructed the view, so though we think that the witness should have been permitted to answer that the tool house obstructed the view, the ruling of the court in regard to it was not to the prejudice of the plaintiff; hence there can be no reversal on account of this.

At page 35 of the record it was sought to show by the plaintiff, who was being examined as a witness, that her view of the Pennsylvania track on which the train was approaching which collided with her buggy, was obstructed by freight cars standing on a track of the Wheeling & Lake Erie Company, the claim being that there was negligence on the part of this company in allowing their cars to so stand as to obstruct the view of the Pennsylvania tracks.

This question was asked the plaintiff by her own counsel:

"What effect did the train or the other cars there have on your seeing the Pennsylvania line?"

The court sustained an objection to this question. The offer to show was that the cars of the Wheeling & Lake Erie standing on this track obstructed the view of the plaintiff.

We think that the court should have permitted this question to be answered, for the same reason that we think the court should have permitted answers to the questions in reference to the effect of the tool house upon the ability to see along the line of the Pennsylvania track.

Immediately following this, this question was asked:

"When you were looking southerly along the line of the railroad tracks in front of you, were you able to see the line of the Pennsylvania Railroad?"

The court sustained an objection to that question, and proper exception was taken and an offer made to prove that she was not able to see along the line of the railroad.

However, immediately after this the following questions were asked of the plaintiff, and answered as indicated:

"Q.   I will ask you, did you, while sitting there in your carriage, did you look towards the Pennsylvania Railroad tracks southerly from Grace street?   A. I couldn't see the Pennsylvania track.   The Wheeling & Lake Erie obstructed—the cars of the Wheeling & Lake Erie obstructed my view.

"Q.   My question was, did you look toward the Pennsylvania tracks in that direction while you were standing there?"

Whereupon the court said:   "The answer may stand."

So that, the court left as an answer to go to the jury testimony of the witness that the cars spoken of obstructed her view.   We think the court did right in this.

Then followed this question:

"Did you look in that direction?"

This question was objected to by the defendant, the objection was overruled, and she gave this answer:

"I looked in a northerly and southerly direction and could not see the Pennsylvania tracks."

As all that was sought to be shown by the witness in reference to the interference with her view of the Pennsylvania track by these cars which were standing on the Wheeling & Lake Erie track got to the jury, we see no reversible error in the ruling of

the court, though we are not able to see why the court ruled out the same thing earlier in the testimony of the same witness.

Later on a similar situation arose in reference to the claim on the part of the plaintiff that her view of the approaching train on the Pennsylvania road was obstructed by cars on the track of that road, but as answers to these questions could not have affected the right of the plaintiff one way or another to recover against the Wheeling & Lake Erie, we regard it as of no importance in this connection, although, upon reading the record, we find the same situation in reference to this, that practically all that the witness' undertook to say in answer to any questions was finally admitted by the court.

Again, at page '62 of the record, the plaintiff, being under cross-examination by counsel for the defendant railroad company, was asked as to her having seen the trains passing at this point frequently. She said she had, and she was asked: "About how fast an hour have you seen trains passing over that crossing on the Pennsylvania track?"

She answered: "You mean freight or passenger?"

The counsel replied: "Freight and passenger trains, both?"

Objection to this was made by the plaintiff, and it was overruled, and she answered: Freight trains about twenty or thirty miles an hour, and that she had seen that frequently.

We think this was competent as tending to show that she might have anticipated that there would be a train along at that rate of speed crossing Grace street at the point where such street crossed the track.

At page 162 of the record it is shown that the plaintiff was recalled to the stand for further cross-examination. On her part evidence was introduced of the existence of an ordinance in the village of Bedford restricting the speed at which trains might run through the village to ten miles an hour, and when she was recalled, as already stated, she was asked by counsel for the railroad company if she knew anything about that ordinance, and she answered that she did not.

Objection was made by her counsel to this question and that objection was overruled.

This ruling was proper, upon the principle that she could not rely upon the provisions of an ordinance in relation to the speed of trains of which she had no knowledge.

No other questions are presented to us which affect the claim of the plaintiff against the Wheeling & Lake Erie Company. As to these, we find no error to her prejudice in the rulings of the court, and the result is that the judgment is affirmed.